SO ORDERED.

SIGNED this 8th day of January, 2015.


UNITED STATES BANKRUPTCY JUDGE



# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 13-50921 |
| RICHARD LAMAR BOYD, JR., ) | |
| JENNIFER ANNE BOYD, ) | |
| ) | |
| Debtors. ) | Chapter 7 |
| ) | |
| ) | |
| CABARRUS COUNTY AND THE ) | |
| CABARRUS COUNTY ) | |
| DEPARTMENT OF SOCIAL ) | |
| SERVICES, now DEPARTMENT OF ) | |
| HUMAN SERVICES ) | |
| ) | |
| Plaintiff, ) | Adv. Pro. No. 13-06084 |
| ) | |
| v. ) | |
| ) | |
| RICHARD LAMAR BOYD, JR. AND ) | |
| JENNIFER ANNE BOYD, a/k/a ) | |
| JENNIFER A. HOMZA ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

THIS MATTER came before the Court for trial on October 9, 2014, after due and proper

notice, upon the Complaint to Determine Dischargeability of a Debt (the "Complaint") filed by

1

Cabarrus County and the Cabarrus County Department of Social Services, now the Department of Human Services (the "County"). Appearing before the Court was Richard M. Koch, counsel for the County; and Kristen Nardone, counsel for Richard and Jennifer Boyd (collectively, the "Debtors"). Following the trial, and upon consideration of the Complaint, the responses thereto, the arguments of counsel, the live testimony of Stephanie Payne (formerly Stephanie Williams) and the Debtors, and admitted exhibits, the Court determines that the debt owed by Jennifer Boyd to the County is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), while the debt owed by Richard Boyd to the County is dischargeable.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334 and Local Rule 83.11 entered by the United States District Court for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this Court has jurisdiction to hear and determine.

## FACTS

I.   PRE-PETITION BACKGROUND

A.   *The Debtors' Background and Financial Matters*

Jennifer Boyd (formerly Jennifer Homza) graduated high school in 1997 and received her associate degree at Rowan-Cabarrus Community College. She was previously a waitress at a restaurant where she met her husband, Richard Boyd. Since then, she has been a stay-at-home mom for her four children. Richard Boyd graduated high school and spent fifteen years managing various restaurants until he lost his job in 2010.

Mrs. Boyd first applied for food stamps through the County in 2009 and later applied for Medicaid in 2011. Food and Nutrition Services ("FNS") and Medicaid are federally-funded

public assistance programs administered by North Carolina to provide money for food and health care to low-income families. Customers can apply for these benefits in person or by mailing in an application. To continue receiving benefits, customers must complete a recertification form every six months to determine their eligibility. Each of the forms contains a provision on the first page informing the customers that resources are available if they need help completing the forms. Mrs. Boyd completed and signed all of the documents herself without any outside help. Mr. Boyd never signed any of the forms that were submitted to the County.

Between 2010 and 2012, Mrs. Boyd submitted six FNS recertification forms. On all but the last recertification form, Mrs. Boyd affirmed that nobody in the home was employed. On the first five recertification forms, the sources of income she reported included Mr. Boyd's unemployment income, which ended on January 2, 2011, Mr. Boyd's child support, and contributions from family members. On the last recertification form that Mrs. Boyd completed in August 2012, she reported that Mr. Boyd was self-employed and infrequently received compensation from fixing computers at home. She stated in her own handwriting that the income she disclosed was the "total income since [Mr. Boyd] started fixing computers."

Mrs. Boyd also applied for Medicaid assistance in 2011 and submitted three re-enrollment forms between 2011 and 2012. Similar to the FNS recertification forms, Mrs. Boyd did not disclose any source of income beyond familial contributions and child support until the third Medicaid re-enrollment form in April 2012. In that form, she noted that Mr. Boyd was working for Mark Carrick, owner of Fix IT Computers, and received $100 to $140 weekly.

B.   *Mr. Boyd's Work Experience From 2010-2012*

During the period of time Mr. Boyd was unemployed, he enrolled in Rowan-Cabarrus Community College under a job training program to learn to work on computers. In 2010, Mr.

Boyd began working on computers for his friends and family, and he received compensation for some of these jobs. He maintained a spreadsheet that documented his income and kept receipts for the business expenses that he incurred. On the Debtors' federal tax return transcript from 2010, their adjusted gross income was $31,276, including Mr. Boyd's unemployment compensation that ended in January 2011. The transcript noted a net self-employment income of $4,934. Mr. Boyd completed the tax return using tax preparation software called TurboTax.

In early 2011, shortly after Mr. Boyd's unemployment compensation stopped, Mr. Boyd began periodically completing jobs for Fix IT Computers. For many of these jobs, he would bring the computers home to work on them. The frequency of these jobs with Fix IT Computers began to gradually increase throughout the year. On the Debtors' federal tax return transcript from 2011, he reported a net self-employment income of $19,199. At trial, Mr. Boyd testified that this information came from the 1099 forms that he received after completing jobs. Again, he completed the tax return using TurboTax.

In 2012, Mr. Boyd continued to work with Fix IT Computers and eventually was placed on the company's payroll near the end of the year. On the Debtors' federal tax return from 2012, he reported a net self-employment income of $23,970. Similarly, Mr. Boyd testified that the information used to reach this figure came from the 1099 forms he received. Again, he completed the tax return using TurboTax.

C.   *The County's Investigation*

On September 24, 2012, the Program Integrity section of the Cabarrus County Department of Human Services ("DHS") received a referral for suspected fraud regarding Mrs. Boyd's submitted forms. The referral stated that there were discrepancies between what Mrs. Boyd reported and what the Debtors disclosed to the Internal Revenue Service ("IRS"). On

4

September 27, 2012, Program Integrity mailed a letter to Mrs. Boyd notifying her of the discrepancy and asking her to come into the office to speak with one of the investigators. Mr. Boyd met with Stephanie Payne, who was employed by Cabarrus County DHS as a Program Integrity Investigator at the time, on October 22, 2012. When asked why Mr. Boyd reported self-employment income in 2010, he responded that he fixed computers in 2010 but did not receive a 1099. He went on to say that he continued to receive income for computer repair jobs in 2011 through 2012. At the end of the meeting, Mr. Boyd stated that he understood that he and his wife must report any self-employment income they receive when completing the recertification forms. Ms. Payne transcribed this conversation, and Mr. Boyd reviewed the statement, indicated the facts as written were true, and signed it.

In March 2013, the Debtors received a letter notifying them of a hearing with the Cabarrus County DHS to determine whether they committed an Intentional Program Violation. On April 29, 2013, the day before the hearing, the Debtors met with Ms. Payne to discuss their case. After the discussion, Mrs. Boyd decided that she did not want to continue with the hearing and signed the Waiver of Disqualification Hearing (the "Waiver"). On the Waiver, she indicated that she was not admitting that she committed a program violation but would nevertheless accept the twelve month disqualification. This disqualification did not affect Mr. Boyd's or their children's eligibility to receive food stamps or Medicaid.

## **ADVERSARY PROCEEDING**

The Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 26, 2013. In their petition, the Debtors did not list any secured or priority debt. They listed $47,253 in unsecured debt, of which they attributed $36,000 to "alleged overpayment of medical assistance." Following the Debtors' bankruptcy filing, the County initiated an adversary

proceeding against the Debtors on October 11, 2013, objecting to the Debtors' discharge of $12,838.00 in FNS overpayments and $22,628.13 in Medicaid overpayments, totaling $35,466.13, pursuant to 11 U.S.C. § 523(a)(2).[1]  In response the Debtors raised two affirmative defenses: failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and good faith.

## DISCUSSION

The fundamental purpose of bankruptcy has been described as providing the debtor a fresh start "unhampered by the pressure and discouragement of preexisting debt." *In re Belk*, 509 B.R. 513, 518 (Bankr. W.D.N.C. 2014).  However, the Bankruptcy Code carves out certain exceptions to a debtor's ability to receive a discharge.  Section 523(a)(2) provides two discharge exceptions for debts incurred through false statements about the debtor's financial condition via subsection A and B.  Subsection A of § 523(a)(2) provides that a debtor is not entitled to a discharge of debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." Under subsection B, debts incurred based on a false statement are excepted from discharge, but they must involve a written statement respecting the debtor's financial condition.  Although some courts disagree with what constitutes a statement "respecting the debtor's . . . financial condition" under § 523(a)(2)(B), the better reasoned view is that a statement regarding a debtor's employment and level of income is a statement respecting a debtor's financial condition.  Because this case involves forms completed by the Debtors regarding their employment and income, the County can only prevail under § 523(a)(2)(B) and any further analysis of § 523(a)(2)(A) is unnecessary.

---

[1] At the hearing, counsel for both parties stipulated to the total amount of overpayments.

As the party challenging the dischargeability of the debt, the County has the burden of establishing each of the following elements under § 523(a)(2)(B) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 284 (1991); *In re Stanley*, 66 F.3d 664, n. 4 (4th Cir. 1995). Under § 523(a)(2)(B), a Chapter 7 discharge does not discharge an individual debtor from debt: (1) for money, property, services, or an extension, renewal, or refinancing of credit; (2) to the extent obtained by a written statement respecting the debtor's financial condition; (3) that is materially false; (4) that the debtor caused to be made or published with an intent to deceive the creditor; and (5) the creditor reasonably relied on the written statement. *In re Fisher,* 2004 WL 1811264, at *2 (Bankr. M.D.N.C. Aug. 2, 2004). Because the provision is written in the conjunctive, a creditor seeking an exception to discharge under this section must establish each of the listed elements. *In re Rutherford*, 2014 WL 1329256, at *4 (Bankr. W.D. Va. Mar. 31, 2014). . Furthermore, subsection (B) requires the creditor to show "reasonable reliance" on the written statement. *Field v. Mans,* 516 U.S. 59, 66 (1995).

Courts have decided the dischargeability of a debt for overpayment of public assistance benefits in various ways. Using § 523(a)(5), some courts have classified these overpayments as a domestic support obligation as defined by § 101(14)(A). *See Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 617 (Bankr. E.D. Wis. 2008) (reversing bankruptcy court ruling and finding that the creditor's claim for food stamp overpayments was a domestic support obligation afforded priority status under § 507(a)(1)); *In re Anderson*, 439 B.R. 206, 209-10 (Bankr. M.D. Ala. 2010). Other courts have ruled that overpayments for public assistance do not constitute a domestic support obligation for purposes of § 523(a)(5) but nevertheless are non-dischargeable under § 523(a)(2). *See In re Hickey*, 473 B.R. 361, 365 (Bankr. D. Or. 2012) (determining overpayments of food stamp or public assistance benefits occasioned by the debtor's unlawful

failure to report were non-dischargeable).  Given that the County has prayed for relief only under § 523(a)(2), this Court will not address the question of whether public assistance overpayments qualify as a domestic support obligation.

Turning to the present case, Mrs. Boyd completed the FNS and Medicaid forms in order to receive funds for purchasing food and for health care.  There is no dispute that the Debtors received financial assistance from the County as a result of the forms that Mrs. Boyd submitted.  Additionally, the forms that Mrs. Boyd completed and mailed to the County to receive assistance constitute a written statement respecting the debtor's financial condition.  Each of the FNS and Medcaid forms contained questions about the Debtors' income and any other sources of financial contributions.  *See In re Brown*, 1992 WL 12626473, at *3 (Bankr. S.D. Iowa Jan. 8, 1992) (finding that a debtor's application to receive food stamps and other public assistance qualified as a statement respecting her financial condition); *see also In re Adams*, 312 B.R. 576, 582 (Bankr. M.D.N.C. 2004) (stating that documents containing financial information satisfy the requirement in § 523(a)(2)(B) that there be a written document respecting "financial condition").  Thus, the first and second elements under § 523(a)(2)(B) are satisfied.

One of the key issues in this case is whether the information that Mrs. Boyd disclosed on the FNS and Medicaid forms was materially false.  For purposes of § 523(a)(2)(B), a statement is materially false if it "paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Premier Bank v. Koester (In re Koester)*, 437 B.R. 363, 368 (Bankr. E.D. Mo. 2010).  Although most cases involving a creditor attempting to except a debt under §523(a)(2)(B) involve loan documentation, the standard for what constitutes "materially false" is nonetheless applicable to the present situation.  *See In re Jones*, 37 B.R. 195, 197 (Bankr. E.D. Mo. 1984)

8

(determining that the debtor's failure to inform her social worker of her new employment constituted a materially false statement); *In re Hatcher*, 111 B.R. 696, 700 (Bankr. N.D. Ill. 1990); *see also Adams,* 312 B.R. at 580 (stating that the "applicability of § 523(a)(2) is much broader than the case in which the debt is for loan proceeds which are not repaid"). Under this standard, the false statements contained in the documents submitted by Mrs. Boyd clearly constitute material misrepresentations. On the six FNS recertification forms that Mrs. Boyd completed and submitted, she indicated on all but the last one that no one in the house was working. Similarly, Mrs. Boyd did not disclose any source of income beyond contributions and child support until the third Medicaid re-enrollment form in April 2012. However, on each of the tax returns that the Debtors filed between 2010 and 2012, they list business income under Schedule C. Mr. Boyd also testified that his work with Fix IT Computers increased gradually between 2011 and 2012. Given the number and magnitude of the false statements contained in the documents submitted by Mrs. Boyd, such documents were substantially inaccurate as a whole. These documents presented a substantially untruthful picture of the financial condition of the Debtors by misrepresenting information of the type which would normally affect the County's guidelines to grant FNS and Medicaid assistance.

      The evidence also established that the County relied on the forms that Mrs. Boyd submitted in order to continue receiving FNS and Medicaid assistance. The County's policy is to take forms at face value and presume that all information contained is accurate and complete. Only when there is a discrepancy does the County investigate further to verify the validity of the forms. The County relied on the Debtors' forms as being truthful until September 2012 when they found a discrepancy between the information that Mrs. Boyd had submitted and the Debtors' IRS tax returns. *See Brown*, 1992 WL 12626473, at *3 (stating that a county's

department of social services relied on the debtor's application for aid in determining whether to extend public assistance benefits); *In re Hickey*, 473 B.R. 361, 365 (Bankr. D. Or. 2012). The County has presented sufficient evidence demonstrating that they relied on the Debtors' statements in determining whether to grant assistance and how much.

In addition to showing actual reliance upon a false financial statement, a creditor seeking relief under § 523(a)(2)(B) also must show that such reliance was reasonable. The standard for what is "reasonable" is determined on a case-by-case basis judged in the light of the totality of the circumstances after an examination of facts and circumstances present in the case. *In re Copeland*, 291 B.R. 740, 784 (Bankr. E.D. Tenn. 2003). Although this standard is a more demanding standard than the justifiable reliance standard required under §523(a)(2)(A), the Court finds from the evidence that the County's reliance on the forms that Mrs. Boyd submitted regarding the Debtors' financial condition was reasonable under the totality of the circumstances present in this case. The programs administered by the County are intended to help struggling families receive assistance, and their policy is to presume that customers will complete the forms truthfully and to the best of their knowledge. The County had no reason to believe that the Debtors' forms were anything but truthful until they first noticed a discrepancy in the Debtors' tax returns in September 2012. *See In re Jones*, 37 B.R. 195, 197 (Bankr. E.D. Mo. 1984) ("Plaintiff's sole basis for determining Defendant's eligibility for [public assistance] was her written statement of her financial condition. Plaintiff had no other reasonable means of verifying Defendant's unemployment.") Based on the totality of the circumstances, it was reasonable for the County to rely on the information that Mrs. Boyd submitted regarding the Debtors' financial condition in determining whether to grant assistance.

The County also has the burden to prove that the Debtors knew that the statements regarding their financial condition were false and that such false statements were published with the intent to deceive.  Direct evidence of intent to deceive is not required under § 523(a)(2)(B).  Instead, because it is very difficult to obtain direct proof of a debtor's state of mind, a creditor may present evidence of the surrounding circumstances from which such intent may be inferred.  *In re Adams*, 312 B.R. 576, 586 (Bankr. M.D.N.C. 2004).  The evidence demonstrated that during the period the Debtors were receiving assistance from the County, Mrs. Boyd was aware that Mr. Boyd received income from fixing computers.  Mrs. Boyd was a stay-at-home mom, and Mr. Boyd often brought the computers home with him to fix.  Mrs. Boyd testified that she never considered her husband to be employed during this period of time and, as a result, did not think she had to disclose the money he received because it was not a large amount.  However, on several of the documents, Mrs. Boyd disclosed that she was receiving contributions from other family members.  Mrs. Boyd testified that she reported these contributions in order to be as transparent as possible, but this undermines her testimony that she did not disclose Mr. Boyd's income because she did not consider him to be employed.  *See Jones*, 37 B.R. at 197 (inferring that the debtor intended to deceive the welfare agency by not revealing her employment because disclosure would eliminate benefits); *see also In re Hatcher*, 111 B.R. 696, 700 (Bankr. N.D. Ill. 1990) ("By continuing to accept [public assistance benefits], each acceptance was tantamount to an intentional false representation in writing that she remained unemployed.").  Given Mrs. Boyd's educational background and her testimony, this Court finds that Mrs. Boyd was aware of the income Mr. Boyd was receiving and intentionally deceived the County by not disclosing it on the documents she submitted.  The County has carried its burden with respect to Mrs. Boyd as

required under § 523(a)(2)(B), and this Court concludes that Mrs. Boyd may not discharge the debt owed to the County.

Although the County has carried its burden of proving that Mrs. Boyd was intentionally deceptive in the documents she sent them, they have failed to prove that Mr. Boyd's conduct rose to the same standard. In cases involving jointly-filed married debtors, "the marital relationship alone is not enough to impute one spouse's fraud to the other for nondischargeability purposes." *In re Hill*, 425 B.R. 766, 774 (Bankr. W.D.N.C. 2010) (quoting *Tower Credit, Inc. v. Gauthier (In re Gauthier)*, 349 F. App'x 943, 945 (5th Cir. Oct. 21, 2009); *see also Allison v. Roberts (In re Allison)*, 960 F.2d 481, 485-86 (5th Cir. 1992) (granting discharge to debtor-wife but not debtor-husband where "no evidence in the record link[ed] [the wife] to false or fraudulent acts or plans"). No evidence was presented to establish that Mr. Boyd had any knowledge of the information that Mrs. Boyd included in the forms. Moreover, Mr. Boyd never signed the forms, and there is no indication that he ever read them before Mrs. Boyd mailed them to the County. As such, the County has failed to carry its burden of proof with respect to Mr. Boyd as required under § 523(a)(2)(B), and this Court concludes that Mr. Boyd may discharge the debt owed to the County.

The Debtors' asserted two affirmative defenses in their response: failure to state a claim pursuant to Rule 12(b)(6) and good faith. The Court finds neither of the defenses to be persuasive and consequently denies both of them.

## **CONCLUSION**

Based on the foregoing, it is therefore ORDERED that the County's Complaint to Determine Dischargeability of a Debt is granted as to Jennifer Boyd and denied as to Richard Boyd. This Court concludes that Jennifer Boyd may not discharge the debt owed to the County

pursuant to § 523(a)(2)(B) in the amount of $35,466.13, but Richard Boyd may receive his discharge with respect to the Debt owed to the County. A judgment so providing shall be entered contemporaneously with the filing of this memorandum opinion.

**END OF DOCUMENT**